```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF KENTUCKY
                         LOUISVILLE DIVISION


UNITED STATES OF AMERICA,      )  Case No. 3:15MJ-497
                               )
        Plaintiff,             )
                               )
VS.                            )
                               )
DEWAYNE KANAMORE,              )
                               )  November 17, 2015
        Defendant.             )  Louisville, Kentucky


        *****************************************

              TESTIMONY OF NICHOLAS PATON
                 AT PRELIMINARY HEARING
            BEFORE HONORABLE COLIN H. LINDSAY
               UNITED STATES MAGISTRATE JUDGE

        *****************************************


APPEARANCES:

For United States:      Jo E. Lawless
                        U.S. Attorney's Office
                        717 West Broadway
                        Louisville, Kentucky 40202

For Defendant:          Rob Eggert
                        600 West Main
                        Suite 300
                        Louisville, Kentucky 40202

[Defendant present.]


                Alan W. Wernecke, RMR, CRR
                 Official Court Reporter
                   232 U.S. Courthouse
                Louisville, Kentucky 40202
                      502-625-3779
Proceedings recorded by mechanical stenography, transcript
produced by computer.
```

Case 3:15-cr-00140-DJH Document 9 Filed 11/23/15 Page 2 of 20 PageID #: 16

Paton - Direct                                                    2

1       (Proceedings in open court.)
2           MS. LAWLESS: United States would call Special Agent
3    Nick Paton.
4       (NICHOLAS PATON, called by United States, sworn.)
5                        DIRECT EXAMINATION
6    BY MS. LAWLESS:
7    Q. Please state your name for the record and spell your last
8    name.
9    A. My name is Nick Paton, P-A-T-O-N.
10   Q. By whom are you employed?
11   A. I'm employed with the Bureau of Alcohol, Tobacco, Firearms &
12   Explosives.
13   Q. What is your position with, I'm going to refer to it as
14   ATF?
15   A. I'm a special agent.
16   Q. Okay. Special Agent Paton, are you familiar with a
17   criminal complaint, affidavit, and arrest warrant concerning a
18   Mr. Dewayne Kannamore that was presented to Judge Lindsay over
19   the weekend?
20   A. I am.
21          MS. LAWLESS: Your Honor, may I approach?
22          THE COURT: Yes.
23   Q. And you are the affiant in support of this criminal
24   complaint and arrest warrant, correct?
25   A. I am.

1  Q.  Is there anything that you need to change or modify from
2  what is contained in the documents here in the court's record?
3  A.  Mr. Kannamore's name -- I believe has last name is spelled
4  with two N's and the affidavit has it with just one.
5  Q.  Other than that, are there any substantive changes to the
6  affidavit in support of the criminal complaint?
7  A.  No.
8            MS. LAWLESS:  That's all I have, Your Honor.  This is
9  a matter that's in the record.
10           THE COURT:  Mr. Eggert.
11           MR. EGGERT:  Thank you.
12                       CROSS-EXAMINATION
13 BY MR. EGGERT:
14 Q.  Agent, I believe you were there at the execution of a search
15 warrant.  Were you present at the execution of a search warrant
16 at 6228 Ledgewood Parkway?
17 A.  Yes, sir.
18 Q.  And that would have been on November 13th, 2015?
19 A.  Yes, sir.
20 Q.  All right.  And at the time of that execution of the search
21 warrant, was that search warrant for Mr. Kannamore?
22 A.  No, sir.
23 Q.  All right.  It was for the residents of Apartment 1 on
24 Ledgewood Parkway, is that correct?  6228 Ledgewood Parkway?
25 A.  Yes, sir.

1  Q. Who would those residents have been?
2  A. One was Mr. Ali Kenny. The other was a female. I don't
3  recall her name at the moment.
4  Q. All right. And they lived in Apartment 1; is that correct?
5  A. That's correct.
6  Q. At what time did you enter the apartment?
7  A. It was approximately 2200 hours.
8  Q. Were you familiar with Mr. Kannamore prior to that time?
9  A. Vaguely, yes, sir.
10 Q. Well, were you looking for Mr. Kannamore that evening?
11 A. No, sir.
12 Q. This warrant for Ledgewood, did that have anything to do
13 with Mr. Kannamore?
14 A. No, sir.
15 Q. All right. So you, on the 13th, had no idea that
16 Mr. Kannamore would be there; is that correct?
17 A. That's correct, sir.
18 Q. All right. So on the 13th, you arrive at this residence,
19 you say, about 10:00; is that correct?
20 A. Approximately.
21 Q. All right. Did you see Mr. Kannamore enter the residence?
22 A. No, sir.
23 Q. Did any of your fellow law enforcement officers see him
24 enter the residence?
25 A. Not to my knowledge.

1  Q. Had he just gotten there? Had he been there for a day? Do
2  you know?
3  A. Through interviews he stated that he had been there for
4  approximately 10 to 15 minutes.
5  Q. Well, did your agents interview Roman Brown?
6  A. I don't know, sir.
7  Q. Well, did police interview Mr. Brown and cite him and he
8  said he had just given him a lift there and he was only there 10
9  minutes?
10 A. If that's his brother, yes, sir, I believe that's correct.
11 Q. All right. How many law enforcement officers entered the
12 residence?
13 A. Approximately 10.
14 Q. And I assume most of these would be state officers?
15 A. It was a mix, sir, of both state and federal.
16 Q. And did you knock on the door?
17 A. We did, sir.
18 Q. And nobody answered?
19 A. Correct, sir.
20 Q. Okay. And at that time it's fair to say you-all used a
21 battering ram?
22 A. Correct, sir.
23 Q. And broke down the door; is that right?
24 A. Yes.
25 Q. So this apartment -- when you first enter, what do you see

```
 1  in this apartment?  Living room, kitchen?  What's the geography
 2  of this apartment?
 3  A.  The first room when you make entrance was the living room.
 4  Q.  Were the residents there, that is, Ali, I think you said
 5  Kane, and the female?
 6  A.  Mr. Kenny and the female, yes, were there.
 7  Q.  All right.  Anybody else there?
 8  A.  Yes, sir, Mr. Kannamore was there.
 9  Q.  Anybody else there?
10  A.  Mr. Kannamore was there.  No one else, sir.
11  Q.  Okay.  So Kane is there and the white female is there.
12  Where are they?
13  A.  They are in the living room, sir.
14  Q.  Where is Mr. Kannamore?
15  A.  When I made entrance, I saw Mr. Kenny and the female in the
16  living room, and I attended to them while other officers went
17  around me, and per the affidavit they saw Mr. Kannamore going to
18  the back right bedroom.
19  Q.  All right.  You go in and you are in the living room?
20  A.  Correct, sir.
21  Q.  Are you saying you saw Kannamore or not?
22  A.  I did not, sir.
23  Q.  At all?  At that point you didn't see him at all?
24  A.  At that point, no, sir.
25  Q.  All right.  Now, did you or did police authorities arrest
```

1   Mr. Kane -- Mr. Kenny, I mean, and the female?
2   A.   Yes, sir.
3   Q.   And what did you arrest them on?  What were the charges?
4   A.   I didn't arrest them, sir.
5   Q.   What did police arrest them on?
6   A.   I'm not sure, sir.
7   Q.   Did they charge them with the same drugs you charged
8   Kannamore with?
9   A.   No, sir.
10  Q.   They were charged with different drugs?
11  A.   Yes, sir.
12  Q.   What drugs were those?
13  A.   There was --
14          MS. LAWLESS:  Your Honor, at this time I have to
15  object.  I'm not sure how this bears on probable cause with
16  regard to Mr. Kannamore.
17          MR. EGGERT:  Judge, they introduced this affidavit.
18  They say drugs were found.  Apparently they arrested the other
19  people who actually occupied the residence and were the subject
20  of the search warrant, and they arrested him for drugs.  I think
21  that's highly relevant.
22          MS. LAWLESS:  For the charge that they are facing.
23  Mr. Kannamore is being charged based on the drugs that he had in
24  the bedroom where he was.
25          MR. EGGERT:  We don't know --

1           MS. LAWLESS: I think we are on a fishing expedition
2    with regard to charges that are not before this Court or
3    relevant to Mr. Kannamore.
4           THE COURT: All right. Understood. Both of you,
5    please, don't try -- it's not a question of not trying to -- try
6    not to talk over each other. I don't know that it's relevant,
7    but I don't know that it's particularly harmful either. So I'm
8    going to allow the agent to answer the question if he knows,
9    which as I understand it goes to were they arrested for the same
10   drugs or for different drugs.
11   A.  It was different drugs, Your Honor.
12   Q.  Were those drugs found on Mr. Kenny and the female?
13          MS. LAWLESS: Objection, again, Your Honor. Again, we
14   have a limited focus with regard to a probable cause hearing
15   based on the charges that the Court has been presented with with
16   regard to Mr. Kannamore.
17          THE COURT: Right. Mr. Eggert, I see why you would
18   want to know and why you would want me to know whether they were
19   charged with the same drugs or not, but the agent has said they
20   were not charged with the same drugs. I don't know why it
21   matters what those other defendants were charged with.
22          MR. EGGERT: It's not so much that. I don't know what
23   the drugs were, if they were the same drugs that were found --
24   same kind of drugs that were found in the bags of these people
25   living there. They are making this awfully tightly focused. We

1   are going from the living room to the bedroom.  All I'm asking
2   for is one room in that living room.  They apparently got drugs.
3   What were they?  That seems pretty focused on why we are here,
4   especially because my client is charged with drugs.
5              THE COURT:  Well, I think you should be allowed
6   substantially more leeway to question the agent about the drugs
7   on which the charges against your client are based and much less
8   so with respect to these other drugs other than establishing --
9   and I think you already have -- but other than establishing that
10  it was a different body of drugs, so to speak, for which these
11  other folks were charged, and I don't know why any more about
12  that matters as to probable cause on these charges against
13  Mr. Kannamore.
14             MR. EGGERT:  Judge, I would like to know what the
15  drugs were because that certainly could -- if they are the same
16  type of drugs that were found.
17             THE COURT:  I'll allow you to ask him a few more
18  questions about this, but just know that the position of the
19  United States is gaining traction with respect to relevance of
20  this.
21             MR. EGGERT:  I understand.  Thank you, Your Honor.
22  BY MR. EGGERT:
23  Q.  What kind of drugs were found on Mr. Kenny and the
24  female?
25  A.  To my knowledge, no drugs were found on them.

1  Q.  What kind of drugs then did they end up being charged with?
2  A.  There was an amount of methamphetamine, heroin, crack
3  cocaine, weed, and I believe a little bit of spice.
4  Q.  Of course, heroin and meth would have been the drugs
5  Mr. Kannamore was charged with, correct?
6  A.  That's correct, sir.
7  Q.  All right.  And the heroin and meth that Kenny and the
8  female were charged with, you stated they were not located on
9  their person; is that correct?
10 A.  That's correct, sir.
11 Q.  Were they located in either of the bedrooms?
12 A.  In the back left bedroom, sir.
13 Q.  Whose bedroom was that?
14 A.  During interview, both Mr. Kenny and the female stated that
15 was their bedroom that they stayed in.
16 Q.  All right.  I gather law enforcement interviewed Mr. Kenny
17 and the female?
18 A.  Correct, sir.
19 Q.  Did they give statements regarding Mr. Kannamore?
20         MS. LAWLESS:  Objection, Your Honor.  We are back
21 to this is not a time for pretrial discovery.  We are here for
22 a determination of probable cause on the contents of the
23 affidavit.
24         MR. EGGERT:  I can -- the affidavit isn't all that's
25 probable cause, but he talked about their statements and they

1   talked and giving statements, and I didn't say what did they say
2   about themselves.  I asked what they said about Kannamore.  That
3   would seem highly relevant.
4           THE COURT:  Well, as to him talking about it, he's
5   talking about it because you are asking him about it, and it
6   wasn't clear to me -- I'm not saying you are wrong, but it
7   wasn't clear to me your question was that limited.
8           MR. EGGERT:  I thought I said Kannamore.  If I
9   haven't, I'll rephrase it.
10  BY MR. EGGERT:
11  Q.  What did they say about Kannamore?
12          MS. LAWLESS:  Again, I'm going to object.  There's
13  nothing in the affidavit that talks about any statements by
14  other people.  At this particular stage in criminal proceedings,
15  the defense is not entitled to know who our witnesses might be
16  or what they had to say.  We are here to determine the accuracy
17  and whether the information in this affidavit established
18  probable cause, not early discovery.
19          THE COURT:  Mr. Eggert, I think she is right.  There's
20  nothing in the complaint -- the complaint is not based on these
21  statements you are now asking him about.  So it can't form the
22  basis -- it cannot be part of the probable cause for the
23  complaint.
24          MR. EGGERT:  Thank you, Your Honor.  Judge, if I could
25  note this objection, that is, really I would argue the issue is

1   probable cause, not this complaint.  And they can't shield all
2   these facts they apparently don't want me to know by saying it's
3   not in the complaint.  That would be my objection.
4            THE COURT:  Understood.  I'm not saying ultimately
5   you are not entitled to some of this information.  I'm just
6   saying I believe it's beyond the pale of what we are doing here
7   today.
8   BY MR. EGGERT:
9   Q.  Now, you are in the living room, and you are with Mr. Kenny
10  and the female, correct?
11  A.  Yes, sir.
12  Q.  All right.  And at what point did you see Mr. Kannamore?
13  A.  I saw him later after he was in custody, sir.
14  Q.  So you didn't see him at all before he was arrested?
15  A.  That's correct, sir.
16  Q.  You didn't see him go from one bedroom to the other?
17  A.  No, sir.
18  Q.  Now, did you see a black handgun being dropped?
19  A.  I did not, sir, no.
20  Q.  Well, who supposedly saw this handgun being dropped?
21  A.  Another LMPD detective.
22  Q.  Who was that?
23  A.  Detective George Campos.
24  Q.  So Detective Campos says he saw Kannamore drop a gun; is
25  that correct?

1   A.   Yes, sir.
2   Q.   Now, Kannamore is charged with two -- I guess two bags, is
3   that correct, having two bags?
4   A.   Yes, sir.
5   Q.   And where were these bags found?
6   A.   The bags were found next to his person in the back right
7   bedroom.
8   Q.   Is Campos or the detectives going to say that they saw
9   Kannamore with these bags?
10  A.   Yes, sir.
11  Q.   And they are going to say that they actually saw him with
12  the bags; is that correct?
13  A.   Yes, sir.
14  Q.   All right.  And is anyone else besides Campos going to say
15  that?
16  A.   Yes, sir.
17  Q.   And who is that?
18  A.   ATF Special Agent Eric Walker.
19  Q.   Now, this particular gun that you-all have, has it been
20  fingerprinted?
21  A.   It's currently in LMPD CSU right now, yes, sir, being --
22  Q.   Being what?  Has it been swabbed, fingerprinted?
23  A.   All of the above, sir.
24  Q.   So it's been swabbed for DNA?
25  A.   Yes.  Correct, sir.

1   Q.  Okay.  You don't have a comparison yet, but you are saying
2   it's already been swabbed for DNA; is that right?
3   A.  It was already taken to CSU.  I don't know what they have
4   already done, sir.
5   Q.  Well, did they lift latent prints from it?
6           MS. LAWLESS:  Objection, Your Honor.  We are now again
7   going beyond.  We are talking about in this affidavit that
8   police officers saw Mr. Kannamore throw the gun.  Whether
9   there's a positive DNA or fingerprints really is beyond the
10  scope of determination of probable cause for whether this
11  gentleman was the person in possession of that firearm.
12          MR. EGGERT:  You know what?  I think it's highly
13  relevant whether they took fingerprints or swabs.  Mr. Kannamore
14  has pled not guilty.  He's not saying that this affidavit isn't
15  true in all respects.  I don't think we are entitled to say
16  that.  We are contesting the affidavit.  We are saying it's not
17  correct.  I'm trying to probe if this gun that he supposedly
18  possessed, do they have fingerprints, do they match Kannamore,
19  did do they swabs.  I think that's legitimate for a preliminary
20  hearing.  I understand there's limits here, Judge, but when we
21  are contesting, we are saying we didn't have the gun, that seems
22  a pretty relevant question.
23          THE COURT:  I think the question is appropriate thus
24  far.  As we discussed before, there are limits, but I don't have
25  any problem with the witness answering the question that's been

1   posed thus far as to what evidence has been collected.
2   BY MR. EGGERT:
3   Q.  All right.  You are stating that CSU has this -- has the
4   gun, correct?
5   A.  Yes, sir.
6   Q.  Okay.  And you believe that they have tried to lift latent
7   prints?
8   A.  Yes, sir.
9   Q.  And that they have swabbed it, right?
10  A.  Yes, sir.
11  Q.  All right.  And presumably you don't have any results yet,
12  correct?
13  A.  That's correct.
14  Q.  Now, in terms of ownership of this gun, who had this gun --
15  was Mr. Kannamore -- do you have any evidence Mr. Kannamore was
16  staying there?
17            MS. LAWLESS:  Objection, Your Honor.  Again, we are
18  kind of beyond the scope.  The evidence that's before the Court
19  is that a police officer, two, saw him throw a gun, not whether
20  he was living there or staying there, and ownership is certainly
21  beyond the scope of whether somebody had control or possession
22  of a firearm.
23            MR. EGGERT:  There's also drugs, Judge.  I think it's
24  a legitimate question.  Was he staying at the place where these
25  things were allegedly found?

1            THE COURT: It's kind of a tweener. It's certainly
2    not an element of the charge that he be living in the house, but
3    I guess I don't see the harm in the witness answering the
4    question as to whether or not Mr. Kannamore was living in the
5    house or whether he drew a conclusion about that one way or
6    another.
7    BY MR. EGGERT:
8    Q.   Do you believe he was living in the house, or what is your
9    conclusion?
10   A.   Mr. Kannamore stated that he was trying to stay there that
11   night.
12   Q.   He was trying to stay there?
13   A.   That night, yes, sir.
14   Q.   That leads me then -- apparently you got statements from
15   Mr. Kannamore; is that correct?
16   A.   Yes, sir.
17   Q.   Okay. Did you talk to him?
18   A.   Yes, sir.
19   Q.   There at the house or later at an office?
20   A.   It was at the house.
21   Q.   Okay. What do you say he said to you?
22   A.   He said that he was looking for a place to stay that night
23   and was trying to stay there.
24   Q.   I'm not asking to see it, but is this statement taped? Is
25   it recorded?

1   A.   It is.
2   Q.   You recorded it?
3   A.   Yes, sir.
4   Q.   So you got a recorded statement from Mr. Kannamore?
5   A.   Yes, sir.
6   Q.   Now, in this statement did you ask him about the gun?
7   A.   Yes, sir.
8   Q.   Okay.  What did he say about the gun?
9   A.   He said that he had no knowledge of it.
10  Q.   And in the statement did you ask him about the drugs?
11  A.   I believe so, but I would have to go back and review it
12  again, sir.
13  Q.   As best you can remember, what did he say about the drugs?
14  A.   I don't remember, sir.
15  Q.   How long did Mr. Kannamore say he had been there before
16  you-all entered?
17  A.   Between 10 to 15 minutes, sir.
18  Q.   Had Kenny or the female seen that gun before?
19  A.   No, sir.
20  Q.   They said they hadn't?
21  A.   That's correct, sir.
22  Q.   Of course, they hadn't seen those bags of drugs, had they?
23  A.   I don't know, sir.  I don't recall.
24  Q.   Just a few more things.  Did you find any drugs on the
25  person of Mr. Kannamore?

1   A.  Mr. Kannamore -- I did not, sir, but Mr. Kannamore was found
2   by other law enforcement officers to be moving the bags of drugs
3   while he was in the back right bedroom.
4   Q.  I understand that's the allegation, but when he was
5   arrested, was anything on his person?
6   A.  Not to my knowledge.
7   Q.  Any ammunition on his person?
8   A.  No, not to my knowledge, sir.
9   Q.  Finally, you were assisting in the execution of this search
10  warrant?
11  A.  Yes, sir.
12  Q.  And the person who -- the people that you had probable cause
13  to believe were committing illegal crimes in that apartment --
14  obviously you-all wouldn't have gotten a warrant unless you had
15  probable cause to believe that there was illegal activity
16  occurring there, correct?
17  A.  That's correct, sir.
18  Q.  And the people who were apparently committing that illegal
19  activity were Kenny and his companion, the white female,
20  correct?
21  A.  Yes, sir.
22  Q.  Were Kenny and the female -- were they in one of the back
23  bedrooms?
24  A.  When we entered, no, they were not, sir.
25  Q.  Did they go into the back bedrooms?

1    A.   After we made entry, sir?

2    Q.   Yeah.

3    A.   No, sir.

4    Q.   Were you the first one to enter?

5    A.   I was, sir.

6    Q.   You were not?

7    A.   I was.

8    Q.   You were the first one in?

9    A.   Yes.

10            MR. EGGERT:  Thank you.  That's all.

11            MS. LAWLESS:  I don't have any questions, Your Honor.

12            THE COURT:  You can step down.  Thank you.

13        (End of excerpt.)

14

15

16                    C E R T I F I C A T E

17       I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM
     THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.
18
      _s/ Alan W. Wernecke_                       November 23, 2015
19   Alan W. Wernecke, RMR, CRR
     Official Court Reporter

20

21

22

23

24

25

```
 1                              INDEX

 2    WITNESSES:

 3    NICHOLAS PATON
          Direct Examination By Ms. Lawless          2
 4        Cross-Examination By Mr. Eggert            3

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```